An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-574

Filed 5 August 2026

Wake County, No. 23CV024026-910

CARLOS VARGAS MORENO, by his Guardian ad Litem JUAN ARREOLA, and DAYSI YAHAIRA ROMERO ARELLANO, Plaintiffs,

v.

FLORIDA ORANGE GOLD LLC, JOSE JAVIER GUTIERREZ, GILBERTO GUTIERREZ and HOWELL FARMING CO., INC., Defendants.

Appeal by Plaintiffs from Orders entered 20 December 2024 by Judge A. Graham Shirley in Wake County Superior Court. Heard in the Court of Appeals 15 January 2026.

*The Bricio Law Firm, P.L.L.C., by Francisco J. Bricio and Katherine N. Bricio, for Plaintiffs-Appellants.*

*Young Moore and Henderson, P.A., by Robert C. deRosset and Matthew C. Burke, for Defendants-Appellees Jose Javier Gutierrez and Gilberto Gutierrez.*

*Bailey & Dixon, LLP, by David S. Coats; and Maynard Nexsen PC, by R. Daniel Boyce, for Defendant-Appellee Florida Orange Gold LLC.*

*Pettey & Partrick, L.L.P., by Sean T. Partrick and Jonathan P. Wright, for Defendant-Appellee Howell Farming Co., Inc.*

HAMPSON, Judge.

**Factual and Procedural Background**

Carlos Vargas Moreno, through his Guardian ad litem, and his wife Daysi Yahaira Romero Arellano (Plaintiffs), appeal from Orders granting summary judgment in favor of Defendants Florida Orange Gold LLC, Jose Javier Gutierrez, Gilberto Gutierrez, and Howell Farming Co., Inc. The Record before us tends to reflect the following:

Florida Orange Gold LLC (FOG) is a limited liability company which primarily employs individuals to perform agricultural work. Its president is Jose Javier Gutierrez (Javier). Gilberto Gutierrez (Gilberto) is an FOG employee whose responsibilities primarily include managing FOG's day-to-day financial operations.

On 18 July 2020, an FOG employee died after suffering heat stroke while working in a North Carolina field. The Occupational Safety and Health Division of the North Carolina Department of Labor (OSHA) investigated the incident and issued FOG a "serious" citation. The citation stated FOG had not furnished "to each of [its] employees conditions of employment and a place of employment free from recognized hazards that were causing or were likely to cause death or serious injury or serious physical harm to employees in that employees were exposed to heat-related hazards associated with working in a hot environment[.]" Specifically, FOG employees worked outside in conditions with heat indices up to 108 degrees Fahrenheit, but FOG "had not developed a heat stress prevention program to recognize and prevent heat-related illnesses and hazards associated with working in a hot environment."

OSHA recommended FOG "develop a heat stress prevention program." On 13 April 2021, FOG signed a "Confirmation of Abatement," attesting it would "fully implement" a program. FOG's heat stress prevention program specified it would, among other things, train its employees on the risk factors for heat-related illness; provide water and electrolytes for the workers; provide rest breaks; provide the workers with a cool location where they could take their breaks; brief employees each day on expected weather conditions; require workers to utilize a "buddy system"; and adjust work schedules "whenever possible" if the heat index reached 91 degrees.

On 5 November 2021, OSHA conducted a follow-up inspection of FOG's operations. OSHA found the hazards had been abated and did not observe any further violations.

However, in 2022, another FOG employee suffered a heat stroke while working. On 19 July 2022, Moreno and his co-workers were brought to pull weeds in a field belonging to Howell Farming. The workers were brought to the field on a bus with no air-conditioning around 7:00 a.m. They worked throughout the day with an hour break for lunch, a fifteen-minute break around 3:00 p.m., and another half-hour break around 3:30 p.m. when they were transported to a different Howell Farming field.

At approximately 5:54 p.m., Moreno collapsed from heat stroke. No supervisor was present. A co-worker phoned Javier and told him Moreno was "unresponsive, looked like he was having a stroke, a seizure." Javier indicated he would be there in

ten minutes. The co-worker called Javier two more times after Moreno became unresponsive. At no point did Javier did call 9-1-1 or instruct anyone else to call 9-1-1.

Javier eventually arrived at the field in his personal vehicle. Javier had Moreno placed in the bed of his pick-up truck, as opposed to the air-conditioned cab.

Moreno was unresponsive, covered in vomit, and had a body temperature of 109 degrees when he reached the hospital. He suffered severe injuries as a result of hyperthermia,[1] was hospitalized for just under a year, and today remains totally and permanently disabled, requiring a wheelchair and assistance with everyday functions. Moreno received Workers' Compensation for his injury.

FOG did not report Moreno's hospitalization to OSHA. OSHA did not receive notice of the incident until one of Moreno's attorneys notified OSHA on 31 August 2022. Thus, OSHA's investigation was not initiated until 6 September 2022.

OSHA's investigation found water had been provided to the workers and they were allowed to take breaks as needed. However, all work was done in direct sunlight without shade. The heat index on the day of Moreno's injury ranged between 91 and 102.5 degrees.

---

[1] Colloquially referred to as "heat stroke."

Upon the conclusion of its investigation, OSHA determined FOG had not "fully" implemented its heat stress prevention program. OSHA issued FOG a "repeat serious" citation for its failure to ensure heat-safe practices.[2]

On 28 August 2023, Plaintiffs filed a Complaint against FOG, Javier, and Gilberto, asserting claims for Moreno's injury. Plaintiffs also asserted claims against Howell Farming for Breach of Nondelegable Duty, Negligent Selection, and Negligent Retention.[3]

On 10 October 2024, Howell Farming filed a Motion for Summary Judgment asserting Plaintiffs could not establish a claim for Breach of Nondelegable Duty and, alternatively, that the claim was barred because Moreno had been contributorily negligent.

On 16 October 2024, FOG filed a Motion to Dismiss, asserting, among other things, the exclusive remedy for Plaintiffs' claim was within the North Carolina Workers' Compensation Act. On 8 November 2024, Javier and Gilberto filed an amended Motion to Dismiss,[4] also asserting Plaintiffs' claims were barred by the exclusivity provisions of the North Carolina Workers' Compensation Act. Each of these Defendants requested their Motions to Dismiss be treated as Motions for

---

[2] OSHA also issued FOG two other citations for violations discovered during its investigation, including one for FOG's failure to report Moreno's injury.

[3] Plaintiffs voluntarily dismissed their claims against Howell Farming for Negligent Selection and Negligent Retention on 20 September 2024.

[4] The original, unamended Motion to Dismiss is not included in the Record.

Summary Judgment in the alternative. Plaintiffs submitted three proposed expert affidavits in opposition to Defendants' Motions.

The Motions came on for hearing on 19 November 2024. FOG moved to strike Plaintiffs' expert affidavits on the basis they, among other things, impermissibly offered legal conclusions and were inadmissible under Rule 702 of the North Carolina Rules of Evidence. Plaintiffs requested to supplement their affidavits with future depositions of those experts, which the trial court denied.

Plaintiffs introduced evidence FOG had failed to enforce its heat stress prevention program. Plaintiffs argued their evidence, particularly in light of the FOG employee death from heat stroke in 2020, fell within the exception to the Workers' Compensation Act's exclusivity provisions, and therefore they could seek relief through a civil action. Defendants, for their part, maintained their position Plaintiffs' claims were barred by the Act's exclusivity provisions.

After the conclusion of the hearing, Defendants submitted proposed orders granting their Motions to the trial court via email. Plaintiffs responded with a request that the trial court "make specific findings of fact for each of his Orders in this case."

On 20 December 2024, the trial court entered Orders granting summary judgment in favor of Defendants as to all claims and dismissing the action for lack of subject matter jurisdiction. In the Orders, the trial court also granted FOG's request

to strike Plaintiffs' three expert affidavits. Plaintiffs timely filed Notices of Appeal on 3 January 2025.

## **Issues**

The issues on appeal are whether the trial court: (I) failed to make required Findings of Fact in its Orders; (II) denied Plaintiffs procedural due process when it struck their expert affidavits; and (III) erred in granting summary judgment for Defendants.

## **Analysis**

I.      Findings of Fact

As an initial matter, Plaintiffs argue the trial court erred by "fail[ing] to make findings of fact" in its Orders.

"Findings of fact and conclusions of law are necessary on decisions of any motion or order ex mero motu only when requested by a party and as provided by Rule 41(b)."[5]  N.C. Gen. Stat. § 1A-1, Rule 52(a)(2) (2025).  "[W]hen requested, findings of fact and conclusions of law must be made even on rulings resting within the trial court's discretion."  *Andrews v. Peters*, 318 N.C. 133, 139, 347 S.E.2d 409, 413 (1986).  Generally, however, "it is not proper to include findings of fact in an order granting summary judgment."  *Winston v. Livingstone College, Inc.*, 210 N.C. App. 486, 487, 707 S.E.2d 768, 769 (2011) (citations omitted).

---

[5] Rule 41(b) pertains to involuntary dismissals and is not relevant to our discussion.  *See* N.C. Gen. Stat. § 1A-1, Rule 41 (2025).

On appeal, Plaintiffs argue the trial court was required to make findings as to its ruling on Plaintiffs' expert affidavits. However, Plaintiffs did not specify this in their request to the trial court—they simply requested findings of fact be included in the trial court's summary judgment Orders. Thus, based off the vagueness of Plaintiffs' request, we are not convinced the trial court would have erred by not including any findings of fact in its summary judgment Orders.

In any event, contrary to Plaintiffs' assertions, the trial court's Orders do contain Findings of Fact bearing on the admissibility of Plaintiffs' expert affidavits:

> 2. At the close of the November 19, 2024 hearing on HFCI's Motion for Summary Judgment (heard after Defendants' FOG, Jose Javier Gutierrez, and Gilberto Gutierrez (collectively "Gutierrez Defendants") Motions to Dismiss), which collectively lasted over 4 hours, the Court considered the evidence closed for said Motion;
>
> 3. As part of the Hearing the Plaintiffs requested to supplement their experts' affidavits with the future (not yet taken) depositions of their own experts and the Court denied that request at the Hearing;
>
> 4. The Court further finds that the Defendant HFCI's oral Motion made during the Hearing to strike Plaintiffs' experts' affidavits submitted prior to the Hearing should be, and hereby is, allowed because the contents of the affidavits are not in compliance with Rule 702 and the applicable *Daubert* standards[.]

Therefore, presuming for our limited purposes that the trial court was required to include said Findings, we conclude it sufficiently did so. Consequently, the trial court did not err in the form of its Orders.

II.     Admissibility of Expert Affidavits

Next, Plaintiffs raise what they characterize as a "procedural due process" issue. Specifically, Plaintiffs argue the trial court denied them procedural due process when it "*sua sponte* challenged the admissibility of the affidavits."

In the instant case, Plaintiffs offered three expert affidavits in opposition to Defendants' Motions. FOG moved to strike the affidavits on the basis they impermissibly offered legal conclusions and were inadmissible under Rule 702 of the Rules of Evidence. Indeed, the trial court, reviewing the affidavits, expressed concern the affidavits did not "even come close to complying with Rule 702":

> [Trial Court]: I mean, I look at their affidavits, and how can I find that they even come close to complying with Rule 702, in terms of what methods they used and how they apply those methods to the facts? I mean, I can't tell whether their opinions comply with *Daubert* based off those affidavits.
>
> [Plaintiffs' Counsel]: Can I address the affidavits?
>
> [Trial Court]: (Nonverbal response.)
>
> [Plaintiffs' Counsel]: So it – thanks for the Ipse Dixit reminder. There is content in the affidavit that says what their opinion – opinions are with regard to the failures; and then in terms of what they reviewed, that's listed in the affidavit.
>
> [Trial Court]: Yeah, but *Daubert* requires much more than that. One, you got to be able to reference – someone else has to come in and be able to replicate, and I can't tell what standards they used, how they apply the facts to those standards to reach their ultimate opinions.
>
> . . . .
>
> [Plaintiffs' Counsel]: Okay. So my argument is that the opinions are contained in the affidavit, and they're available for deposition.

Plaintiffs argue the trial court did not give them notice it would be challenging the admissibility of their expert affidavits under *Daubert*/Rule 702. However, our Rules of Evidence clearly provide: "Preliminary questions concerning the . . . admissibility of evidence *shall be determined by the court*[.]" N.C. Gen. Stat. § 8C-1, Rule 104(a) (emphasis added). Moreover, "[w]hen expert testimony is offered, . . . the trial court will generally be 'afforded wide latitude' in determining whether the proffered expert testimony will be admissible.' " *Moore v. Proper*, 366 N.C. 25, 30, 726 S.E.2d 812, 817 (2012) (quoting *State v. Bullard*, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984)). Thus, any assertion by Plaintiffs that they were not on notice of a potential *Daubert* challenge to their affidavits is without merit.

Further, "[t]he trial court has the discretion to determine 'whether or when special briefing or other proceedings are needed to investigate reliability [of expert testimony].' " *State v. McGrady*, 368 N.C. 880, 893, 787 S.E.2d 1, 11 (2016) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)). Therefore, the trial court was entitled to decide the admissibility of Plaintiffs' expert affidavits without allowing Plaintiffs additional time to brief the issue.

Simply put, there is no evidence the trial court denied Plaintiffs procedural due process regarding the admission of their expert affidavits. Additionally, there is no evidence the trial court abused its discretion in determining the affidavits were inadmissible. Consequently, the trial court did not err in striking the affidavits.

III.   Summary Judgment

Plaintiffs argue the trial court erred by granting summary judgment in favor of Howell Farming on Plaintiffs' claim for Breach of Nondelegable Duty and in favor of FOG, Javier, and Gilberto on Plaintiffs' claims under *Woodson* and *Pleasant*. We address each in turn.

A. *Standard of review*

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and quotation marks omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (citation and quotation marks omitted).

"A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citations omitted). "If the moving party meets this burden, the non-moving party must in turn either show that a genuine issue of

material fact exists for trial or must provide an excuse for not doing so." *Id.* (citations

omitted).

"The non-moving party 'may not rest upon the mere allegations of his

pleadings.' " *Id.* at 370, 289 S.E.2d at 366 (quoting N.C. Gen. Stat. § 1A-1, Rule 56(e)

(1981)). However, "[e]vidence presented by the parties is viewed in the light most

favorable to the non-movant." *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247,

249 (2003) (citing *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)).

B. *Breach of nondelegable duty*

"Generally, one who employs an independent contractor is not liable for the

independent contractor's negligence unless the employer retains the right to control

the manner in which the contractor performs his work." *Woodson v. Rowland*, 329

N.C. 330, 350, 407 S.E.2d 222, 234 (1991) (citing *Mack v. Marshall Field & Co.*, 218

N.C. 697, 12 S.E.2d 235 (1940)). However, "[o]ne who employs an independent

contractor to perform an inherently dangerous activity may not delegate to the

independent contractor the duty to provide for the safety of others[.]" *Id.* at 352, 407

S.E.2d at 235 (citing *Evans v. Elliott*, 220 N.C. 253, 259, 17 S.E.2d 125, 128-29 (1941)).

When the activity is inherently dangerous, "[t]he party that employs the independent

contractor has a continuing responsibility to ensure that adequate safety precautions

are taken." *Id.* (citation omitted).

> To establish a breach of the nondelegable duty, a plaintiff must
> show: (1) the activity causing the injury was, at the time of the
> injury, inherently dangerous, (2) the employer knew or should

- 12 -

> have known, at the time of the injury, of the inherent dangerousness of the activity, (3) the employer failed to take reasonable precautions or ensure that such precautions were taken to avoid the injury, and (4) this negligence was a proximate cause of the plaintiff's injuries.

*Coastal Plains Utils., Inc. v. New Hanover Cnty.*, 166 N.C. App. 333, 348, 601 S.E.2d 915, 925 (2004) (citing *O'Carroll v. Texasgulf, Inc.*, 132 N.C. App. 307, 312, 511 S.E.2d 313, 317-18, *disc. review denied*, 350 N.C. 834, 538 S.E.2d 198 (1999)). Whether an activity is an inherently dangerous one is assessed on a "case-by-case basis" and is generally a question reserved for the jury. *Woodson*, 329 N.C. at 354, 407 S.E.2d at 236 (citation omitted).

Presuming, without deciding, a jury could find the activity in question here was an inherently dangerous activity, then Howell Farming, if it knew of the circumstances creating the danger, cannot escape liability by merely relying on the legal ground FOG is an independent contractor. *Id.* at 356-57, 407 S.E.2d at 238. However, we conclude on the Record before us, Plaintiffs' forecast of evidence is insufficient as to Howell Farming's knowledge of the circumstances creating the alleged danger.

In *Woodson*, the defendant-employer knew the trench in which the plaintiff was working was unsafe "in that it was not being properly sloped, shored, or braced, and that a trench box was not being used[,] [i]t knew these precautions were required by OSHANC for the safety of the workers[,]" and the defendant-employer had not

acted to "ameliorate the dangers." *Id.* at 357, 407 S.E.2d at 238. That evidence was sufficient to survive summary judgment. *Id.*

By contrast, in *Dunleavy v. Yates Construction Co., Inc.*, 114 N.C. App. 196, 442 S.E.2d 153 (1994), this Court held summary judgment was properly entered for the company that hired the independent contractor because the company "did not know and had no reason to know of the circumstances creating the danger . . . nor did [it] have direct knowledge of the circumstances creating the danger." *Id.* at 203, 442 S.E.2d at 56. There, the company hired an independent contractor to construct sewer lines. *Id.* at 198, 442 S.E.2d at 53. The crew dug a trench which had not been "shored, sloped, braced, or otherwise supported to prevent a collapse," in violation of OSHA standards, and a crew member was killed when a portion of the trench collapsed. *Id.* at 198-99, 442 S.E.2d at 54. The injured crew member had not been provided with a hard helmet, which also constituted an OSHA violation. *Id.* at 199, 442 S.E.2d at 54.

In affirming the grant of summary judgment for the company, the *Dunleavy* Court noted the company was not "versed in the OSHA requirements" for trench digging, and it did not know the independent contractor had commenced its work at the site. *Id.* at 203, 442 S.E.2d at 56. Nor had the company been on notice of any dangerous condition. *Id.* (citation omitted). And even though a corporate agent of the company had been on site earlier that day, "he left [before the danger was created], and was not at the site when the accident occurred." *Id.*

Here, the Record shows Javier attested no-one at Howell Farming was aware Moreno's crew would be weeding in their fields on the day of the incident. Likewise, two Howell Farming employees attested they did not know any FOG employees were in their fields that day. Additionally, there is no evidence Howell Farming knew FOG was not fully enforcing its heat stress prevention program on the day in question. Rather, the Record shows FOG attested to OSHA in 2021 it would adopt the heat stress prevention program, OSHA's follow-up investigation confirmed this and found no further violations, and, thus, Howell Farming had no reason to believe FOG was not enforcing the program. Plaintiffs have not produced any evidence to the contrary.[6]

Thus, taking "all reasonable inferences . . . in the light most favorable to the non-moving party[,]" Plaintiffs have not shown Howell Farming had direct knowledge of the circumstances creating the danger in the instant case. *Woodson*, 329 N.C. at

---

[6] Plaintiffs argue the trial court failed to view the evidence of Howell Farming's knowledge in the light most favorable to Plaintiffs. Specifically, Plaintiffs argue there is evidence Javier had called Howell Farming multiple times on 19 July 2022, prior to Moreno's collapse. At the hearing, Plaintiffs suggested this was evidence Howell Farming knew FOG's employees were in its fields. The trial court suggested Javier and Howell Farming could have been "shar[ing] jokes."

While we agree the trial court's comment inappropriately viewed the evidence in a light more favorable to Howell Farming, our analysis remains unchanged. Even viewing this evidence in favor of Plaintiffs, it does not show Javier was in communication with Howell Farming about when or where Moreno's weeding work was taking place. Nor does it show Howell Farming knew FOG had failed to enforce its heat stress prevention program. Thus, even presuming Howell Farming knew Moreno's crew was in one of its fields, there is still insufficient evidence Howell Farming was "on notice of any dangerous condition." *Dunleavy*, 114 N.C. App. at 203, 442 S.E.2d at 56 (citation omitted).

344, 407 S.E.2d at 231 (citation omitted). Therefore, the trial court properly entered summary judgment in favor of Howell Farming.[7]

C. Woodson *claims*

"The North Carolina Workers' Compensation Act . . . , located in Chapter 97 of our General Statutes, was created to 'ensure that injured employees receive sure and certain recovery for their work-related injuries without having to prove negligence on the part of the employer or defend against charges of contributory negligence.' " *Hidalgo v. Erosion Ctrl. Servs., Inc.*, 272 N.C. App. 468, 471, 847 S.E.2d 53, 56 (2020) (quoting *Whitaker v. Town of Scotland Neck*, 357 N.C. 552, 556, 597 S.E.2d 665, 667 (2003)) (citing N.C. Gen. Stat. § 97-9 (2019)). "However, to balance competing interests between employees and employers, the Act includes an exclusivity provision, which 'limits the amount of recovery available for work-related injuries and removes the employee's right to pursue potentially larger damage awards in civil actions.' " *Id.* (quoting *Woodson*, 329 N.C. at 338, 407 S.E.2d at 227) (citing N.C. Gen. Stat. § 97-10.1 (2019)).

In *Woodson v. Rowland*, our Supreme Court set out an exception to the Act's exclusivity provision, holding an employee who receives workers' compensation under the Act may also pursue a civil action against his employer when the employer

---

[7] Because we conclude the trial court properly entered summary judgment in favor of Howell Farming on Plaintiffs' claim for Breach of Nondelegable Duty, we do not address Howell Farming's arguments the claim is barred by Moreno's contributory negligence.

"intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct[.]"  329 N.C. at 340-41, 407 S.E.2d at 228.

The *Woodson* exception is both "narrow," *Fagundes v. Ammons Dev. Grp., Inc.*, 251 N.C. App. 735, 738, 796 S.E.2d 529, 532 (2017), and "exacting[,]" *Hidalgo,* 272 N.C. App. at 471, 847 S.E.2d at 56.  *See also Whitaker*, 357 N.C. at 557, 597 S.E.2d at 668 ("[The *Woodson*] exception applies only in the most egregious cases of employer misconduct.").  "The conduct must be so egregious as to be tantamount to an intentional tort."  *Shaw v. Goodyear Tire & Rubber Co.*, 225 N.C. App. 90, 101, 737 S.E.2d 168, 176 (citation omitted), *disc. review denied*, 367 N.C. 204, 748 S.E.2d 323 (2013).

Five years after *Woodson* was decided, this Court published its opinion in *Pastva v. Naegele Outdoor Advertising, Inc.*, 121 N.C. App. 656, 468 S.E.2d 491, *disc. review denied*, 343 N.C. 308, 471 S.E.2d 74 (1996).  There, we reversed the trial court's dismissal of the plaintiff's *Woodson* claim for failure to state a claim under Rule 12(b)(6) of our Rules of Civil Procedure.  In a concurring opinion, Judge Wynn noted, in the five years since *Woodson* had been decided, "the Court has consistently pointed out facts that *do not* establish a *Woodson* claim.  However, it remains an uncertainty as to what facts *do* allege a *Woodson* claim sufficient to overcome pretrial dismissal." *Id.* at 660, 468 S.E.2d at 494 (Wynn, J., concurring) (emphasis in original) (footnote omitted).

Indeed, over twenty years after Judge Wynn made this observation in *Pastva*, we still "have the *Woodson* facts and nothing else." *Id.* We do not have much—if any—more clarity as to what facts are necessary to, as it relates to this case, survive summary judgment proceedings. In 2013, this Court noted it was "unaware of a single litigant in any case which has been subject to appellate review who has successfully pursued a *Woodson* claim since the exception to the exclusivity provisions was set out in 1991." *Shaw*, 225 N.C. App. at 102, 737 S.E.2d at 176 (citation omitted). Our review of the caselaw indicates the state of things has not changed in the years since.

In *Kolbinsky v. Paramount Homes, Inc.*, 126 N.C. App. 533, 485 S.E.2d 900 (1997), the employee of an independent contractor sued after he severed a portion of his hand while cutting plywood with a circular saw. *Id.* at 534, 485 S.E.2d at 901. The evidence showed the independent contractor was aware a guard had been removed from the circular saw, which violated OSHA regulations; the independent contractor nonetheless allowed the employee to use the saw; the independent contractor may have been aware the employee was a minor; and employing a minor to operate a circular saw was a violation of child labor regulations. *Id.* at 535, 485 S.E.2d at 902. The trial court granted summary judgment in favor of the independent contractor and this Court affirmed, agreeing the evidence "failed to show that [the independent contractor] engaged in intentional misconduct knowing that such

conduct was substantially certain to cause serious injury or death." *Id.* at 534, 485 S.E.2d at 901-02 (citations omitted).

In reaching its decision, the Court in *Kolbinsky* discussed *Pendergrass v. Card Care, Inc.*, 333 N.C. 233, 424 S.E.2d 391 (1993). In *Pendergrass*, the plaintiff "alleged that he was injured when the employer directed him to work at a machine when it knew that certain dangerous parts of the machine were unguarded, in violation of OSHA regulations and industry standards." *Kolbinsky*, 126 N.C. App. at 535, 485 S.E.2d at 902 (discussing *Pendergrass*). Our Supreme Court held:

> Although [the employer] may have known certain dangerous parts of the machine were unguarded when they instructed [the employee] to work at the machine, we do not believe this supports an inference that they intended that [the employee] be injured or that they were manifestly indifferent to the consequences of his doing so.

*Pendergrass*, 333 N.C. at 238, 424 S.E.2d at 394 (concluding evidence was insufficient to establish claims under both *Woodson* and *Pleasant*).

In *Hidalgo*, an employee was killed after he had been operating a tractor on a steep slope when it started to roll, ejecting him from the tractor and causing fatal injuries when the tractor rolled on top of him. 272 N.C. App. at 469, 847 S.E.2d at 54. The employer had previously replaced the tractor seat with one that did not have a seatbelt, which was an OSHA violation. *Id.* at 473, 847 S.E.2d at 57. In reversing the trial court's denial of the employer's motion for summary judgment, this Court noted:

> While the lack of a seatbelt created an unsafe condition and may well have made serious injury or death more likely or even probable in the event of an accident, in light of the high bar set by our Supreme Court in *Woodson* and *Whitaker*, this fact alone does not support Plaintiff's argument the lack of seatbelt made it substantially certain death or serious injury would occur when operating the tractor.

*Id.* at 473-74, 847 S.E.2d at 57.

Here, taking all reasonable inferences in the light most favorable to Plaintiffs, we, in light of our precedent, conclude the evidence is insufficient to demonstrate FOG "intentionally engaged in misconduct knowing that it was substantially certain to cause serious injury or death[.]" *Whitaker*, 357 N.C. at 557, 597 S.E.2d at 668. In *Woodson*, for example, an "experienced construction worker with knowledge about soil composition and the dangers associated with deep-ditch trenching" testified it was substantially certain "a cave-in resulting in serious injury or death" would have resulted from the employer's failure to follow proper trenching safety protocols. 329 N.C. at 346, 407 S.E.2d at 231. No such evidence exists here. To the contrary, the Record shows multiple other days where the crew was working under similar conditions, yet there is no indication anyone suffered from heat-related illness in those instances. *See Hidalgo*, 272 N.C. App. at 473-74, 847 S.E.2d at 57 (noting tractor had been operated for over a year without proper seatbelt, but there was no record of any safety incidents). As in *Hidalgo*, FOG's failure to fully implement its heat stress prevention plan may have been negligent, but we cannot say this failure made it substantially certain death or serious injury would occur. *See id.*

Plaintiffs argue the facts of the present case are unique because: (1) FOG had a prior OSHA citation and (2) previously had an employee death from an injury of the same kind. However, "[n]o one factor is determinative in evaluating whether a plaintiff has stated a valid *Woodson* claim[.]" *Regan v. Amerimark Bldg. Prods., Inc.*, 118 N.C. App. 328, 331, 454 S.E.2d 849, 852, *disc. review denied*, 340 N.C. 359, 458 S.E.2d 189 (1995), *cert. denied*, 342 N.C. 659, 467 S.E.2d 723 (1996).

It is true, in the instant case, Plaintiffs alleged facts which, if true, reveal numerous, flagrant failures on the part of FOG in violation of its own policies: (1) failing to monitor and brief its employees on the daily weather conditions; (2) allowing Moreno and his coworkers to work the afternoon of 19 July 2022 while heat indices ranged from 91 to 102.5 degrees; (3) failing to have a supervisor onsite; (4) failing to call 9-1-1 after learning of Moreno's condition; (5) failing to have an address for the field in which the crew was working to provide to emergency responders, had they been called; (6) leaving Moreno in the heat instead of moving him to an air-conditioned environment when one became available; and (7) failing to use a buddy system for workers to monitor each other. Each of these failures are in direct contravention of FOG's own heat stress prevention program.

Further, there is no question FOG knew of the dangers of heat stroke. It received an OSHA violation after it had an employee die from heat-related illness under a similar set of facts only two years earlier. Although FOG should have had a heat-stress prevention program in place to begin with, it was ultimately put in place

in response to that employee's death. And yet—just two years later—FOG's failure to enforce its program led to catastrophic injuries for another employee.

We are conscious these failures exposed Moreno and his fellow crew members to recognized hazards associated with working in a hot environment. However, we are constrained to conclude, as in *Kolbinsky*, *Pendergrass*, and *Hidalgo*, the evidence does not support an inference FOG intended for Moreno to be injured or that FOG was manifestly indifferent to the consequences of failing to fully implement its heat stress prevention plan. *Whitaker*, 357 N.C. at 558, 597 S.E.2d at 668.

Thus, there is insufficient evidence from which a jury could find FOG's conduct was "so egregious as to be tantamount to an intentional tort." *Pendergrass*, 333 N.C. at 239, 424 S.E.2d at 395. Therefore, the trial court did not err in granting summary judgment in favor of FOG on Plaintiffs' *Woodson* claim.

Moreover, since Javier was at all material times FOG's sole corporate agent, any individual liability on his part must be based on the same standard as that applied to FOG. *See Woodson*, 329 N.C. at 347, 407 S.E.2d at 232 ("A corporation can act only through its agents, which include its corporate officers." (citation omitted)). Thus, Javier's liability, "like that of the corporation, must be determined under the substantial certainty standard." *Id.* at 348, 407 S.E.2d at 232. Since Plaintiffs' forecast of evidence is insufficient to survive FOG's Motion for Summary Judgment, it is, *a fortiori* insufficient to survive Javier's Motion for Summary Judgment. *Id.* at 348, 407 S.E.2d at 233. Additionally, because the evidence shows Gilberto was an

FOG employee—as opposed to its corporate agent—and Plaintiffs have adduced no evidence to the contrary, Gilberto cannot be held liable under *Woodson*. *See id.* at 347, 407 S.E.2d at 232. Consequently, the trial court also did not err in entering summary judgment in favor of Javier and Gilberto on Plaintiffs' *Woodson* claim.

D. Pleasant *claim*

Plaintiffs argue the trial court erred by entering summary judgment against them as to their claim under *Pleasant v. Johnson*.[8] In *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985), our Supreme Court held "the North Carolina Workers' Compensation Act does not insulate a co-employee from the effects of his willful, wanton and reckless negligence." *Id.* at 717, 325 S.E.2d at 250. "An injured worker in such situations may receive benefits under the Act and also maintain a common law action against the co-employee." *Id.*

"The concept of willful, reckless and wanton negligence inhabits a twilight zone which exists somewhere between ordinary negligence and intentional injury." *Id.* at 714, 325 S.E.2d at 247. "We have described 'wanton' conduct as an act manifesting a reckless disregard for the rights and safety of others." *Id.* at 714, 325 S.E.2d at 248 (citations omitted). "The term 'reckless', as used in this context, appears to be merely

---

[8] In their Complaint, Plaintiffs alleged claims under *Pleasant* against both Gilberto and Javier. However, on appeal, Plaintiffs have advanced this argument only as it relates to their claim against Gilberto and have made no arguments in support of their *Pleasant* claim against Javier. Accordingly, this issue is abandoned as it relates to Javier, and we express no opinion as to its merits. N.C. R. App. P. 28(a) (2026) ("Issues not presented and discussed in a party's brief are deemed abandoned.").

a synonym for 'wanton' and has been used in conjunction with it for many years." *Id.* (citing *Bailey v. N.C. R.R. Co.*, 149 N.C. 169, 175, 62 S.E. 912, 914 (1908)).

"Mere negligence, even if conclusively established, does not suffice to establish a *Pleasant* claim, as 'even unquestionably negligent behavior rarely meets the high standard of willful, wanton or reckless negligence.' " *Estate of Baker v. Reinhardt*, 288 N.C. App. 529, 537, 887 S.E.2d 437, 444 (2023) (internal quotation marks omitted) (quoting *Trivette v. Yount*, 366 N.C. 303, 312, 735 S.E.2d 306, 312 (2012)). Moreover, "[k]nowledge of a dangerous hazard, standing alone, does not establish a viable claim under *Pleasant.*" *Id.* at 542, 887 S.E.2d at 447 (citing *Echols v. Zarn, Inc.*, 116 N.C. App. 364, 376, 448 S.E.2d 289, 296 (1994), *abrogated on other grounds by, Mickles v. Duke Power Co.*, 342 N.C. 103, 110, 463 S.E.2d 206, 211 (1995)).

Our caselaw demonstrates the burden of establishing a *Pleasant* claim, although not as exacting as the standard set out in *Woodson*, is nonetheless demanding. In *Echols v. Zarn, Inc.*, the plaintiff's hand was crushed in a machine, which she allegedly had not been trained to operate. 116 N.C. App. at 367-68, 448 S.E.2d at 291. A supervisory co-employee who knew of the machine's dangers and was responsible for enforcing the company's safety policies had directed the plaintiff to reach her hand under the machine's safety gate while it was in operation, resulting in the plaintiff's injuries. *Id.* at 375, 448 S.E.2d at 295-96. The trial court granted summary judgment in favor of the co-employee and this Court affirmed, noting: "Even if we assume that [the co-employee] knew that reaching under the safety gate could

be dangerous, we do not believe this supports an inference that [the co-employee] intended that plaintiff be injured or that she was manifestly indifferent to the consequences of plaintiff reaching under the safety gate." *Id.* at 376, 448 S.E.2d at 296.

In *Fagundes v. Ammons Development Group, Inc.*, we rejected the plaintiff's *Pleasant* claim even where OSHA had investigated the accident, which was the result of a blasting operation; OSHA assessed five citations for "egregious" safety violations; and there was evidence the plaintiff's supervising co-employee was responsible. 251 N.C. App. at 740, 796 S.E.2d at 534. We held the evidence was insufficient to establish a claim at summary judgment because, "before his accident, neither [the co-employee] nor the company had ever been cited for any OSHA violations, nor had anyone been injured as a result of the company's blasting activities." *Id.* By contrast, in *Estate of Vaughn v. Pike Electric, LLC*, 230 N.C. App. 485, 751 S.E.2d 227 (2013), we held the plaintiff's estate successfully stated a *Pleasant* claim where the plaintiff had been killed while working on a powerline and his employer had received at least ten prior serious OSHA safety violations after other employees had been killed or injured while also working on powerlines. *Id.* at 488-89, 751 S.E.2d at 230.

Here, the relevant evidence, taken in the light most favorable to Plaintiffs, tends to show: an FOG employee had died from heat stroke two years prior, FOG attested to OSHA it had subsequently implemented a heat stress prevention program, and the practices outlined in FOG's heat stress prevention program were

not being fully enforced when Moreno suffered his injury. While it is particularly notable that an FOG employee had died from heat stroke only two years prior, the facts at bar are less like those of *Vaughn* and more like those of *Echols* and *Fagundes*.

We cannot say the evidence, on the Record before us, is such that a jury could find Gilberto's actions were so willful, wanton, and recklessly negligent so as to be "equivalent in spirit to actual intent." 312 N.C. at 715, 325 S.E.2d at 248 (citing *Foster v. Hyman*, 197 N.C. 189, 148 S.E. 36 (1929)). Thus, the trial court did not err in granting summary judgment for Gilberto on Plaintiffs' *Pleasant* claim.

## Conclusion

Accordingly, for the foregoing reasons, we affirm the trial court's Order.

AFFIRMED.

Chief Judge DILLON and Judge MURRY concur.

Report per Rule 30(e).